JOHN GOTTLEIB, RESPONDENT, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, APPELLANT.

*Negligence — failure of the master to furnish his servant with safe machinery — when a railroad is liable for failing to have proper bumpers put on freight cars, belonging to another company, but drawn upon its road.*

On a dark night, when snow was on the ground, the plaintiff, a brakeman in the employ of the defendant, was sent to couple together two cars in a freight train which had broken apart. The defendant had three rails laid to enable it to run broad and narrow guage cars in the same train. Freight cars usually have upon their ends pieces of wood, called bumpers, extending six or eight inches beyond the car, so that if the draw-heads pass each other, the shock is received by the buffers, and a brakeman if he be between the cars will be uninjured. One of the cars which the plaintiff was to couple, was a broad guage and the other a narrow guage car. The buffers only extended three inches beyond the car. These cars belonged to another company and not to the defendant. The draw-heads passed each other and the plaintiff was injured.

*Held,* that the question of the defendant's negligence in failing to have proper bumpers upon the cars used by it, was properly submitted to the jury, and that a verdict in favor of the plaintiff would not be disturbed.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages for personal injuries received by the plaintiff on the 6th day of February, 1879, while in the discharge of his duties as a brakeman on a freight train of the defendant.

The plaintiff, as rear brakeman on a freight train running over the road of the defendant, from Susquehanna to Port Jervis, on the night of the injury, was called upon to couple the train together, which was then separated or broken in two. The night was dark and there was snow on the ground. In order to make the coupling the plaintiff was obliged to, and did, take with him for the purpose of making the coupling a three-link coupling chain (weighing sixteen or eighteen pounds), a lantern and a coupling pin.

That plaintiff inserted one of the three links in the draw-head of

the car of the forward part of the train, which was moving backward, and with the three-link in his hand to connect it with the other car on the rear part of the train, which was standing still, walked back with the three-link, the lamp and coupling pin in his hands.

The forward car was a broad gauge and the rear one a narrow gauge car. The cars came together and the plaintiff was caught between the bodies of the cars and injured.

*Lewis E. Carr*, for the appellant.

*T. J. & J. W. Lyon*, for the respondent.

BARNARD, P. J.:

It is difficult to obtain a rule to apply to cases of this character. The liability of a master is clearly stated. The master owes a duty to the employe to furnish safe machinery, tools and appliances adapted to the work to be done, together with capable fellow servants. (*Laning* v. *N. Y. Central R. R. Co.*, 49 N. Y., 523; *Flike* v. *Boston and Albany R. R.*, 53 id., 549.)

There is another class of cases which hold that a master is not bound to furnish the best machinery, tools and appliances, or the safest, but that the master has a wide discretion in doing his business with such tools and appliances as he deems best, and that an employe assumes the risks and dangers incident to the business. (*De Graff* v. *N. Y. Central, etc.*, 76 N. Y., 125; *Gibson* v. *Erie R. R. Co.*, 63 id., 449.) There are other cases holding that the servant is chargeable with negligence against known defects by continuing in the master's employment, and again, cases holding that a servant is chargeable with notice of defects which he might have known, although he was in fact ignorant of their existence.

In the present case the evidence shows that the plaintiff was employed as a brakeman and oilman upon the defendant's road. That the gauge of the road was originally six feet; that another rail has been laid down to make the gauge conform to the ordinary railroad gauge of the country; that narrow gauge and wide gauge cars are hauled indiscriminately on the same train. That upon the occasion of the accident in question a freight train broke in two parts; that the brake was between a wide and narrow-guage car;

that the plaintiff was told to couple the two cars and thereby connect the train; that in doing so, in the very early morning, he was jammed between the two cars and permanently injured. The cars, probably by reason of the difference in gauge, did not strike fair and cover up the draw-heads. The draw-heads passed each other and the cars went violently together. The ends of the cars had pieces of wood, or, as they are called, bumpers, not over three and one-half inches in thickness, so that there was only six inches or thereabouts to protect the plaintiff from injury. The negligence in this case is based solely upon the insufficiency of these bumpers. Upon the whole case, I think it was improper to nonsuit the plaintiff.

It appears from the evidence that the cars belonged to other roads than the defendant, but the defendant owes the same duty to its employes in respect to freight cars that it uses as it does as to its own. It appears that these cars are all under the charge of the defendant's master mechanics. That they are all repaired under the same rules and regulations as govern the repairs of defendant's cars. It appears that the ordinary car is provided with bumpers, from five and one-half to six inches on each end of the same, "thick enough to protect a man's body in case the draw-heads pass." It further appears that the night was dark; that the ground was covered with a deep snow; that the plaintiff acted with proper care himself and made the effort to connect the cars in the usual way; that the accident was not occasioned by his negligence, but was occasioned by the difference in gauge of the cars, aided, it may be, by a curve in the track. It further appears that the cars were very numerous running over the road, and that plaintiff did not know of the particular defect in the bumpers until the instant of the accident. The plaintiff cannot be expected to know of the defect in a single car. The defendant was chargeable with neglect if the master mechanics and foreman failed to discover and remedy defects, if any existed. At all events, such question was one for the jury. (Court of Appeals, *Kain* v. *Smith*, N. Y. Week. Dig., Oct. 6, 1882, vol. 15, p. 160.)

The judgment should be affirmed, with costs.

Cullen, J., concurred.

PRATT, J. :

The principle is well settled that a railroad company owes to its employes a duty of providing and maintaining its operative machinery in good, safe and suitable condition, so as to protect them against danger so far as reasonable care can do it, and any failure in that respect is negligence of the corporation itself.·

Among the appliances necessary for the protection of brakemen are the buffers of freight cars. If well made and strong, the brakeman's duties are comparatively safe; if defective, his work is highly dangerous.

In the case at bar, instead of the buffers ordinarily used, thin strips of wood about three inches wide, wholly unfit to protect the brakemen, were nailed upon the ends of the cars. Any inspection would have disclosed the defect.

Defendants argue that the brakemen had full opportunity to discover the defect and to refuse to perform the service. But to examine the cars for such a defect was no part of the brakeman's duty. (*Porter* v. *Hannibal, etc.*, 60 Mo., 160.) He had a right to assume that so far as inspection would disclose the cars were in good condition. While in the act of coupling he discovered the defect, too late to save himself from injury.

That the plaintiff when ordered to couple the cars at five o'clock in the morning, loaded down with his lantern and a three-link chain weighing sixteen or eighteen pounds, on a slippery road-bed, the train in motion, should fail to examine the cars to see if they were in good condition, is no evidence of negligence. Manifestly his whole attention was required for his proper duty, of which such an examination was not a part.

That the cars were property of other lines is not material; they were supplied to this train by the act of the defendants, and for any defect which inspection would disclose the defendants are responsible.

The appellants assumed that if plaintiff was aware of the defect in the cars, he cannot recover in this action; that if he continued in the employ of the company he waived all claim to recover for any injury thereby occasioned.

Such is not the law. Knowing of such defect his duty was to report it to his superior. He had a right to assume that upon the defect being made known it would be remedied; meanwhile the

train was upon the track, it could not remain there, it must be removed, and the train hands were the persons to do it.

To hold that by performing that duty in the service and for the benefit of their employers, they lose all redress for injury sustained in the performance of such duty, would do violence to reason. If it finally became apparent that the company refused to repair defects, and that the employes must leave the service or continue exposed to peril, then, and not before, he would be put to his election how long he should abide in the service under such notice; and what facts would be held equivalent to notice must be a question for a jury in each case as it arises.  To enforce a stricter rule would be unjust to the employes and detrimental to the interest of the master.   To encourage the train hands to promptly abandon service on the discovery of a defect, would imperil the whole traveling public and go far to render railroad traffic impracticable.

The judgment and order denying a new trial should be affirmed, with costs.

Judgment and order denying new trial affirmed, with costs.